MATHEWS *v.* DARBY, mayor, etc., *et al.*

HINES, J. 1. The mayor and council of the City of Vidalia are authorized, under the general powers contained in the charter of said city, to build schoolhouses within its limits, there being nothing in its charter which forbids this. *Mayor etc. of Cartersville* v. *Baker,* 73 *Ga.* 686.

2. The City of Vidalia, under its charter, is authorized to "buy, hold, exchange, and convey property." Ga. L. 1922, p. 1004. Under this power

Municipal Corporations, 43 C. J. p. 1335, n. 85; p. 1341, n. 49, 54; 28 Cyc. p. 1641, n. 25; p. 1742, n. 6, 11; p. 1744, n. 29.

the mayor and council of that city are authorized in their discretion to sell the city hall, and use the proceeds in erecting a school building for the city.

3. The mayor and council of the City of Vidalia being authorized to sell the city hall and use the proceeds in the erection of a school building for the city, a court of equity will not interfere to restrain or control such action, upon the ground that these officers are selling the city hall for less than its fair market value, and that in consequence their action is unwise and extravagant. To sustain such interference, it must appear either that the act is ultra vires, or fraudulent and corrupt. *Wells* v. *Atlanta,* 43 *Ga.* 67; *Danielly* v. *Cabaniss,* 52 *Ga.* 211.

4. The fact that the light plant and the city hall were built with the proceeds of bonds sold by the city does not require that the proceeds of the sales of these properties should be applied to the redemption of these securities, these properties being in no way pledged by the city to the payment of these bonds, and the constitution of this State requiring that the city should, at or before the time of issuing said bonds, provide for the assessment and collection of an annual tax sufficient in amount to pay the principal and interest of any bonded indebtedness within thirty years from the date of the incurring of the same. Civil Code (1910), § 6564.

5. Where the City of Vidalia failed to levy and collect a tax for the purpose of paying the principal of its bonded indebtedness, as required by par. 2 of sec. 7 of art. 7 of the constitution of 1877, and thereafter, from the proceeds of property in the improvement of which the proceeds of its bonds had been invested, the mayor and council of the city by resolution set aside a portion of such proceeds as a sinking-fund to meet the principal of its several series of bonds, such funds so set apart will be treated as taking the place of the sinking-fund which the city is required to assess and levy for the purpose of meeting the payment of its several issues of bonds; and so treating such funds, it became the duty of the officer or officers of said city, under the direction of the mayor and council thereof, or a duly authorized committee thereof, to invest the same in the securities specified in the act of August 13, 1910 (Acts 1910, p. 100; 1 Park's Code, § 467(a)); and any other investment or disposition of said funds would be illegal and void. *Hogansville Banking Co.* v. *Hogansville,* 156 *Ga.* 855 (120 S. E. 604).

6. The court erred in refusing to enjoin the mayor and council of the City of Vidalia from diverting said sinking-fund from the purpose for which it was created, and from using the same for the purpose of erecting a school building for the city.

7. We affirm the judgment of the court below in so far as it refused to enjoin the mayor and city council from selling the city hall, and from using the proceeds of the sale thereof in the building of a schoolhouse in the city; but we reverse that portion of the judgment refusing to enjoin the mayor and city council from diverting such sinking-fund and from using the same in the erection of such school building.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

No. 6272. JANUARY 13, 1928.

Petition for injunction. Before Judge Hardeman. Toombs superior court. August 26, 1927.

The mayor and council of the City of Vidalia sold the electric-light plant of that city for $50,000. On June 1, 1913, the city contracted a bonded indebtedness of $23,000. These bonds bear 5 per cent, and mature June 1, 1943. Nine thousand dollars of the proceeds of this bond issue were used in erecting and equipping this light plant. By resolution of the mayor and council $23,000 of the proceeds of the sale of the light plant were set aside as a sinking-fund to discharge the bonded indebtedness. The remainder of these proceeds had been expended otherwise by the mayor and council of the city. Besides the above bond issue, the city has issued the following bonds: July 1, 1904, $12,000, bearing 5 per cent. interest, none of which have been redeemed; June 1, 1913, $25,000, bearing 5 per cent. interest, maturing June 1, 1943, $5000 of which have been redeemed; and July 1, 1921, $60,000, bearing 5 per cent. interest, $2000 of which mature annually up to 1951, inclusive, and of which $6000 have been redeemed up to June 14, 1927. The total outstanding bonded debt of the city on said date amounted to $109,000, and the ·city had a sinking-fund of $1500 in bank. On May 13, 1927, the mayor and council passed a resolution revoking the previous resolution setting aside said sum of $23,000 as a sinking-fund, and providing that said sum should be used in the erection of a school building in the city. The same resolution provided for advertising for bids for the purchase of the present city hall, the city reserving the right to accept or reject any or all bids submitted. In pursuance of this resolution bids were advertised for the sale of this hall. The highest bid was one of $15,000, submitted by J. F. Darby. By this resolution the proceeds of the sale of the city hall were to be used in the erection of a school building for the city. The mayor and council purpose to accept this bid for the city hall. The city hall was erected with money derived from the sale of bonds issued by the city.

G. N. Mathews, in his own behalf and for others similarly situated, filed his petition to enjoin the city from selling the city hall, upon the ground that the sum bid therefor was not more than seventy-five per cent. of the reasonable market value of the property, because they had no authority to sell said property for the

purpose of erecting school buildings, and because it was an effort on their part to misappropriate the city's assets and property. It was sought to enjoin the city from using said sum of $23,000 so set aside as a sinking-fund to meet its bonded indebtedness, upon the grounds, (a) that the city had no sinking-fund, other than said sum, for the redemption of said bonds; and (b) that the mayor and council had no authority to use the money derived from the sale of the light plant for erecting school buildings, for the reason that the money realized from the sale of said plant should be used as a sinking-fund to redeem its bonds, that the mayor and council had set aside said sum as a sinking-fund for the redemption of its outstanding bonds, and to use it for any other purpose would be a misappropriation of said money, and that the mayor and council could not lawfully use this money derived from the sale of the light plant for the purpose of erecting school buildings in the city. On the hearing there was evidence that the market value of the city hall did not exceed $15,000, and that such sum was the highest bid received in response to the city's advertisement for bids for the purchase of this property. The trial judge refused an interlocutory injunction, and Mathews excepted.

*Saffold & Sharpe,* for plaintiff.

*D. C. Pattillo* and *B. P. Jackson,* for defendants.