S08G1645. HITCH et al. v. VASARHELYI et al.
(680 SE2d 411)

THOMPSON, Justice.

We granted a writ of certiorari to the Court of Appeals in *Hitch v. Vasarhelyi*, 291 Ga. App. 634 (662 SE2d 378) (2008), and posed this question: Whether the Court of Appeals erred in affirming the trial court's dismissal of the complaint for lack of standing. For the reasons that follow, we answer this question affirmatively.

The Hitches brought suit against the State of Georgia, the Department of Natural Resources, and the Coastal Resources Division of the Department to challenge the issuance of a license to build a dock to Vasarhelyi, a neighboring landowner.[1] They alleged, in pertinent part, that a dock extending across state-owned tidewater beds and marshlands from Vasarhelyi's property would interfere with their view of the marsh and Skidaway River, hamper their ability, or the ability of their successors in interest, to build a dock on their property, and diminish the value of their property. They sought, inter alia, a declaratory judgment to determine whether the issuance of a dock permit "impacting the property and property value of an adjacent landowner is subject to the provisions of the Administrative Procedure Act," as well as mandamus and other relief to rescind the issuance of the license. The state moved to dismiss the complaint and

---

[1] Vasarhelyi was also named as a defendant in the suit. However, she was dismissed at the Hitches' request.

the trial court granted the motion, finding that the Hitches lacked standing to challenge the grant of the license because Vasarhelyi has not yet built the dock. The Court of Appeals affirmed, and we reverse.

To establish standing in cases of this kind,[2] a landowner must demonstrate a substantial interest in the government action and show that this interest is in danger of suffering a special damage or injury not common to all property owners similarly situated. *DeKalb County v. Wapensky*, 253 Ga. 47, 48 (1) (315 SE2d 873) (1984). "By 'similarly situated,' we refer to persons in the general community who may merely suffer inconvenience and exclude those persons who stand to suffer damage or injury to their property which derogates from their reasonable use and enjoyment of it." Id.; *Hollberg v. Spalding County*, 281 Ga. App. 768, 772 (2) (637 SE2d 163) (2006).

In *Moore v. Maloney*, 253 Ga. 504 (321 SE2d 335) (1984), several landowners challenged a decision to rezone neighboring property to allow for the construction of townhouses. The trial court determined that the landowners did not have standing to contest the city council's actions. This Court reversed. As to the substantial interest requirement, this Court found that two of the landowners demonstrated that they possessed a substantial interest which would be affected by the rezoning because they owned lots adjacent to the property in question. As for showing special injury, this Court observed that the landowners showed that the value of their property would decline if townhouses were built on the neighboring property. Going further, this Court noted that the landowners "also produced evidence that the development would create 'visual intrusions on peace and privacy,' and traffic problems related to the physical layout of the lot and the intersection, not just an increase in traffic." Id. at 506. In so doing, this Court stated that a showing of special damage or injury need not necessarily be expressed in terms of economic loss:

> [W]hile the loss of economic value of land may be one manifestation of specific damages caused by rezoning and may be sufficient by itself to support standing, we will not require evidence of a specific change in property value as a prerequisite for the attainment of standing. Where, as here, the parties who seek standing own property contiguous to the rezoned lot and have to live with any changes in the use

---

[2] The standing analysis in zoning cases is well suited to cases in which a landowner's full use and enjoyment of property is threatened by government action. *DBL, Inc. v. Carson*, 262 Ga. App. 252, 254 (2) (585 SE2d 87) (2003).

of the property, such a requirement would be particularly inappropriate.

Id. at fn. 1. See also *AT&T Wireless v. Leafmore Forest Condo. Assn.*, 235 Ga. App. 319, 321 (509 SE2d 374) (1998) (evidence of change in property value is not required to attain standing).

In affirming the dismissal of the Hitches' complaint, the Court of Appeals focused on the fact that the dock had not yet been built. Given that fact, the appellate court concluded, any injury to the Hitches must be deemed speculative. *Hitch*, supra at 636. We think the appellate court's focus is entirely too narrow and its conclusion is erroneous.

First, we note that in several cases, our courts have concluded that landowners had standing to contest a zoning or licensing decision even though the contemplated action had not been completed, or even begun. See, e.g., *Moore v. Maloney*, supra (landowners had standing to challenge rezoning decision although townhouses not built); *DeKalb County v. Wapensky*, supra (landowners had standing to challenge variance although condominium tower not built); *AT&T Wireless v. Leafmore Forest Condo. Assn.*, supra (landowners had standing to contest permit even though communication tower not complete). This is as it should be because a landowner should not have to wait until a contemplated structure is built before bringing suit for declaratory, injunctive, or other relief. See OCGA § 41-2-4. See also *Griffith v. Newman*, 217 Ga. 533, 536 (1) (123 SE2d 723) (1962) (court may take action against threatened or anticipated nuisance when it appears with reasonable certainty that a nuisance will necessarily result from contemplated act).

The second reason why the Court of Appeals erred is because it misapplied the concept of speculative or contingent injuries. The appellate court posited that the alleged injuries are speculative because the issuance of the license to build the dock only gave "Vasarhelyi permission to build across state land — it does not relieve Vasarhelyi from compliance with other laws or give her the right to infringe on the rights of others." (Punctuation omitted.) *Hitch*, supra at 636. What the Court of Appeals missed here is that the license gave Vasarhelyi rights — albeit limited rights — to build a dock; that Vasarhelyi was taking steps to implement those rights; and that the issuance of the license and the building of the dock will adversely affect the Hitches' property.[3] Furthermore, the Hitches

---

[3] An appraisal report notes that the Hitches' property is "uniquely difficult to appraise [because Vasarhelyi] has a license to build a dock across the [Hitches'] marsh area." The report goes on to state that the building of the dock will impair the Hitches' view, erode their privacy, and diminish the value of their property.

showed that they would suffer special damages or injury as a consequence of the issuance of the license and the construction of the dock. The Hitches demonstrated that their view would be impaired, their ability to build a dock would be hampered, and the value of their property would be diminished. These consequences are not speculative. Compare *Thrasher v. City of Atlanta*, 178 Ga. 514, 519 (173 SE 817) (1934) (to be a nuisance, consequences resulting from house under construction must be certain to a reasonable degree) with *Herren v. Board of Ed. &c. of Marietta*, 219 Ga. 431 (134 SE2d 6) (1963) (abutting landowners' fears that condemned property to be used as football stadium would become a nuisance were too speculative).

As neighboring landowners, the Hitches established a substantial interest in the decision of the state to grant the license to build a dock. They also alleged that they have incurred special damage or injury as a result of the state's decision, i.e., damage or injury which is not common to similarly situated property owners. In short, the Hitches have established that they have "an interest of real worth and importance" and that they are not merely "casting themselves in the role of 'champions of the community.' " *DeKalb County v. Wapensky*, supra at 49. The Court of Appeals erred in ruling otherwise.

In recognizing that the Hitches have sufficient interests to challenge the Department of Natural Resources' licensing decision, this Court does not address the extent to which the claims asserted in the complaint set forth claims upon which relief can be granted. That question remains pending below.

*Judgment reversed and case remanded. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

I submit that the majority makes a fundamental mistake in footnote 2 of its opinion which ultimately leads it erroneously to believe that Appellants have standing to bring suit against a State agency challenging its issuance of a license for a neighboring landowner to build a structure on State-owned property. In the absence of statutory provisions that protect such property and govern standing of third-party landowners, Appellants cannot utilize principles of standing which are applicable only in zoning cases or pursuant to specific statutory standing provisions.

Neither the majority nor Appellants rely upon standing based on an interest created by either statutory or constitutional law, presumably because Appellants do not have a property right in what the State permits or prohibits on its own property, and because there is no statute authorizing any challenge to such a decision by the State.

*Georgia Power Co. v. Allied Chemical Corp.*, 233 Ga. 558, 560-561 (1) (212 SE2d 628) (1975). See also *Concerned Citizens of Douglas County v. Douglas County*, 256 Ga. 82, 84 (344 SE2d 641) (1986) (a mere decision by a governmental body to use its land for an authorized purpose " 'in no way affects the constitutionally protected property rights of abutting landowners' "); *Lindsey v. Guhl*, 237 Ga. 567, 572-573 (II) (229 SE2d 354) (1976). Therefore, Appellants have standing to challenge the State's grant of the license if that governmental action was " 'of a sort that, if taken by a private person, would create a right of action cognizable by the courts[.] . . .' [Cit.]" *Georgia Power Co. v. Allied Chemical Corp.*, supra at 560 (1). Appellants clearly would not have a right of action against a private party who merely permitted construction on its own adjoining property, at least so long as the structure did not constitute a nuisance. Thus, Appellants, having already dismissed their claims for trespass and nuisance, likewise do not have standing to sue the State.

Moreover, even if standing were allegedly based upon a statutory or constitutional interest, "[t]he simple existence of an adverse effect on [A]ppellants is not in itself sufficient. Appellants must also show that it is the feature of the . . . administrative action which they seek to attack that was the direct cause of the injury. [Cits.]" *Davis v. Jackson*, 239 Ga. 262, 264-265 (236 SE2d 613) (1977). The direct cause of any injury to Appellants is not the State's grant of a license to build the dock on its property, but rather can only be the actual construction of the dock by Ms. Vasarhelyi once she obtains all necessary approval and permits from other entities.

Citing *DBL v. Carson*, 262 Ga. App. 252, 254 (2) (585 SE2d 87) (2003), footnote 2 of the majority opinion adopts the standing analysis used in zoning cases. However, the test for standing in zoning matters has a peculiar history during which its statutory origin was judicially extended and adapted because it was appropriate for a broader range of zoning cases. *Massey v. Butts County*, 281 Ga. 244 (637 SE2d 385) (2006). The somewhat relaxed standing analysis in zoning cases is appropriate when a landowner complains that a governmental entity with zoning authority has permitted a neighboring property owner to use his land in violation of ordinances which protect all residents and businesses in a certain area. However, a looser standard for standing is not appropriate in the absence of any legislative definition of who is an aggrieved person and especially in the complete absence of any statute or ordinance whatsoever.

*DBL* is distinguishable because the lease of State property in that case was governed by the Coastal Marshlands Protection Act of 1970. OCGA § 12-5-280 et seq. That Act contains a specific provi-

sion which sets forth a standing test similar to that for zoning, in its definition of persons who are "aggrieved or adversely affected." OCGA § 12-5-283 (c). However, the Act specifically exempts a single-family dock such as that permitted by the State in this case. OCGA § 12-5-295 (7). Where, as here, the State is simply determining what to allow on its own property, there exists no authority for an adjacent landowner to bring suit unless there is some contrary statutory provision or he is directly injured by the governmental action. The opposite holding by the majority opens the door to a wholesale loosening of standing requirements never intended by any legislative body. I therefore respectfully dissent to the reversal of the Court of Appeals' judgment.

DECIDED JUNE 15, 2009 —
RECONSIDERATION DENIED JUNE 30, 2009.

*Bouhan, Williams & Levy, Walter C. Hartridge, David B. Dennison*, for appellants.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, Senior Assistant Attorney General, H. Lehman Franklin*, for appellees.